[No. 6,996.—In Bank.]

## ESTATE OF JAMES DUNNE.

ESTATES OF DECEASED PERSONS—ACCOUNTS—COMPROMISE OF CLAIM BY EX-
ECUTOR—PAYMENT.—The executors, with the consent of J. F., one of
the devisees under the will, compromised a claim against the estate—
upon which, after rejection, an action had been brought—agreeing to pay
thirty-five thousand dollars, and paid the same as follows: the executors
being indebted by note to the estate for twenty-four thousand dollars,
and J. F. by note in the same sum, the latter, by agreement between the
parties, executed his note and mortgage to the claimant for the sum of
thirty-five thousand dollars, and the executors assumed, as between them
and J. F., the payment of the one half thereof, and thereupon the ex-
ecutors credited the notes of themselves and J. F. with seventeen thou-
sand five hundred dollars, respectively:
*Held*, That the transaction amounted to a payment of the thirty-five thou-
sand dollars, and the executors were entitled to a credit therefor.
ID.—ID.—CLAIM—INTEREST.—*Held*, That the executors were not entitled
to an allowance in their account for money paid by them in excess of
legal interest in the absence of a written agreement by the testator to
pay the same.
ID.—ID.—ID.—*Held*, That the Court erred in refusing the allowance of an
item in the executors' account set out in the statement.

APPEAL from an order denying a new trial in the Probate Court of the County of Santa Clara. PAYNE, J.

The material parts of the compromise agreement referred to in the opinion were as follows :

" This agreement, made and entered into this 8th day of January, A. D. 1876, by and between Catherine Dunne, * * * party of the first part, A. J. Donnelly and E. T. Donnelly, as the executors of the last will of James Dunne, deceased, parties of the second part, and James F. Dunne, * * * of the

third part, witnesseth : Whereas, a settlement and adjustment of the claims of the party of the first part against the estate of said James Dunne, deceased, has this day been had between the parties thereto ; and whereas, the said party of the first part has this day received from the said parties of the second and third parts a certain promissory note and mortgage, bearing even date herewith, for the sum of thirty-five thousand dollars and interest as therein provided, all in United States gold coin, made and executed and delivered by the party of the third part to the party of the first part, in full settlement and payment of her said claim against the said estate. * * * Now, therefore, in consideration of the premises, the said party of the first part hereby remises, releases, and forever discharges the said estate of James Dunne, deceased, and the said parties of the second part, as the executors of the will of said James Dunne, deceased, from liabilities and obligations of every kind and nature to her, and from all manner of actions, causes of action, dues, claims, and demands, in law or in equity, which she ever had or now has against said estate or said parties of the second part as said executors, and particularly from all and any claim or right she has or might have, to have any portion of the estate of said James Dunne, deceased, mentioned in his will, declared to be common property of said James Dunne, deceased, and herself. Provided, however, that this agreement and release is not to be construed as releasing, and shall not release, her right to have and receive one half of the property of said estate which is mentioned in said will of said James, deceased, as common property (and to which she is entitled as the widow of said James Dunne, deceased), after the payment of debts of said estate and expenses of administration. * * * And it is further agreed by and between the parties of the first and second parts, that the monthly family allowance heretofore and now allowed by the Probate Court of Santa Clara County out of said estate to the party of the first part, for herself and the minor heirs in her care, shall be discontinued after the month of January, A. D. 1876." The deed also recites a prior mortgage executed to one Touchard by James F. Dunne, which he agrees to discharge. It appeared from the will that the bulk of the testator's separate property, including the rancho San Felipe, had

either been conveyed to James F. Dunne in the life-time of the testator, or was devised to him by the will. The sums of money referred to in the opinion as paid to M. Malarin were paid under the following circumstances: The testator in his life-time leased to his son James F. Dunne and A. J. and E. T. Donnelly (afterwards the executors) the rancho San Felipe (which was afterwards devised to the said James F.) at the same time he assigned to the same parties a lease of adjoining lands made by Malarin to himself; and agreed that whatever sums the assignees might pay to Malarin for rent should be deducted from the said rental of fifteen thousand dollars. The sums paid Malarin and claimed in the account of the executors were for rent, and aggregated five thousand four hundred and eighty-one dollars and eighteen cents. The item of nine hundred and thirty-nine dollars, referred to in the opinion, was paid by the executors to the Bank of San José as interest on an allowed claim of the bank against the testator for an overdraft, the bank claiming interest at one per cent. per month.

*Wilson & Wilson* and *Wm. Matthews*, for Appellants.

The compromise was a wise one, and within the power of the executors to enter into. (*Darston* v. *Earl of Oxford*, Prec. in Ch. 189; *Husted* v. *Hoyt*, 12 Conn. 160; *Boyd* v. *Oglesby*, 23 Gratt. 684; *Davenport* v. *First Cong. Soc.*, 33 Wisc. 390; *Favill* v. *Roberts*, 50 N. Y. 223; *Randall* v. *Dusenbury*, 39 N. Y. Sup. Ct. 174; *Clay* v. *Williams*, 2 Munf. 105; S. C., 5 Am. Dec. 453; *Long* v. *Shackleford*, 25 Miss. 559; *Meeker* v. *Vandeveer*, 15 N. J. Law, 3 Green, 392; *Bruner's Appeal*, 57 Pa. St. 46; *Verdier* v. *Simons*, 2 McCord (S. C.) Ch. 385; *Mactier* v. *Lawrence*, 7 Johns. Ch. 207.) The provision of the code authorizing a compromise, with the approbation of the Judge, is only intended to protect the administrator, but does not give, but only recognizes the power to exist. (*Chouteau* v. *Suydam*, 21 N. Y. 184; *Chadbourn* v. *Chadbourn*, 9 Allen, Mass., 173; *Nelson* v. *Cornwall*, 11 Gratt. 724.)

*McKisick & Rankin* and *Geo. F. Baker*, for Respondent.

Whether the action of the Court below as to the item of thirty-five thousand dollars will be affirmed or not, will de-

pend upon the construction which this Court will give to the language of the agreement already referred to. A great deal of evidence was offered in the Court below concerning this agreement. This evidence it will hardly be contended would be allowed to contradict or vary the terms of this, a valid written instrument, nor to show that the effect of the instrument is different from that which its terms plainly denote. (*Richardson* v. *S. R. W. & M. Co.*, 22 Cal. 150.) We must look to the instrument itself for the true interpretation. Mrs. Dunne was given, by decedent's will, nothing but what the law would have given her, viz., her share in the common property after the payment of debts. All of the separate property of decedent, amounting to about half a million dollars, was willed to others—all of it, excepting a small portion, to James F. Dunne. The compromise with Mrs. Dunne was a settlement of her suit, based upon a rejected claim for more than one hundred and fifty thousand dollars, and her claim to have the separate property declared common property. She took thirty-five thousand dollars, and this amount was paid her by James Francis Dunne, who gave her a mortgage on certain parcels of the separate property, so called, willed him by his father. Turning to the agreement, we find it a general release of all claims and demands against the estate and its executors. But after this general formula follows a particular one, viz.: "And particularly from all and any claim or right she has or might have to have any portion of the estate of said James Dunne, deceased, mentioned in his will, declared to be common property of said James Dunne, deceased, and herself." The respondent contends that this payment of thirty-five· thousand dollars was by James Francis Dunne, in his individual capacity, to Mrs. Dunne, for the purpose of freeing the property devised to him from her claim which she proposed to assert against it. The executors were not entitled to credits for the amounts paid by them to the Bank of San José in excess of legal interest. (*Estate of Isaacs*, 30 Cal. 112.)

Ross, J.:

The deceased died June 8th, 1874, leaving surviving him his wife, Catherine Dunne, and four children, namely, James

Francis, Peter Joseph, Mary Felita, and Bridget. He left a will, which, among other things, stated that he had at various times theretofore given to his son James Francis certain parcels of land, and to his sons James Francis and Peter Joseph, share and share alike, a certain other tract of land; and that all of those lands were his separate property. After recognizing his wife's interest in the community property, and making certain bequests, the testator bequeathed to James Francis and Peter Joseph the remainder of his estate, in equal shares. Andrew J. Donnelly, Edward T. Donnelly, and James Francis Dunne were nominated executors, and upon the probate of the will the Donnellys were appointed executors; James Francis was not—he not then having attained his majority.

The present case arises out of the action of the Court below in respect to the settlement of one of the annual accounts—the main controversy growing out of the refusal of the Court to allow the executors a certain item of thirty-five thousand dollars. The facts in relation to this item are thus given in the record: In 1862 the deceased and Catherine Dunne intermarried, Catherine then being possessed of a large real and personal estate, of which her husband assumed charge and proceeded to collect the rents and profits, amounting, from the time of the marriage to the time of his death, to more than one hundred and fifty thousand dollars, for no part of which did he ever in any way account to his wife. After the death of her husband, Catherine presented to his executors a claim against the estate, in proper form, for the sum of one hundred and fifty-five thousand four hundred and seventy-five dollars, which claim the executors rejected. Afterwards, and in due time, she brought suit against the executors to recover of the estate the sum of two hundred and twenty-one thousand and eighty-four dollars. At this stage of the proceedings a compromise was effected between the executors, James Francis, and Catherine Dunne. The latter agreed to accept, in settlement of her claim against the estate, the sum of thirty-five thousand dollars. There were other conditions of the settlement not important to be mentioned. The executors consented to pay Mrs. Dunne the sum mentioned in full satisfaction of her demand against the

estate, and James Francis Dunne also agreed to the arrangement. At this time the executors—E. T. and A. J. Donnelly —were indebted to the estate in the sum of twenty-four thousand dollars, evidenced by their joint and several promissory note, bearing interest at the rate of nine per cent. per annum, the principal sum payable in annual installments, the first of which becoming payable June 1st, 1876; and James Francis Dunne was likewise indebted to the estate in the sum of twenty-four thousand dollars, evidenced by his promissory note, bearing like interest and payable in like manner. By agreement between the parties, in lieu of the thirty-five thousand dollars being paid to Mrs. Dunne in cash, James Francis Dunne executed to her, on the 8th of January, 1876—the day of the settlement—his promissory note for the sum of thirty-five thousand dollars, payable six years thereafter, bearing interest at the rate of nine per cent. per annum, payable annually, together with a mortgage, to secure the payment thereof, upon the rancho San Felipe, devised to him by the testator as a part of his separate estate. The note and mortgage were accepted by Mrs. Dunne as so much cash, and thereupon she, by her authorized agent, executed to the executors a receipt therefor in the following words:

"Received, San José, January 8th, 1876, from E. T. and A. J. Donnelly, executors of the estate of James Dunne, deceased, thirty-five thousand dollars, being payment in full of my claim as creditor against the said estate."

At the time of the execution of the note and mortgage to Mrs. Dunne, the executors entered a credit of seventeen thousand five hundred dollars on their own note of twenty-four thousand dollars, and a like credit of seventeen thousand five hundred dollars on the note of twenty-four thousand dollars of James Francis Dunne to the estate, and charged themselves in their accounts as having received the same, to wit, in the aggregate, thirty-five thousand dollars in cash; and the executors, as between themselves and James Francis Dunne, assumed the payment of one half of the note and mortgage executed by him to Mrs. Dunne. The Court below found that in effecting this settlement the executors acted in good faith, but that no money actually passed from hand to hand. If the executors and James Francis Dunne had respectively paid into the

estate the sum of seventeen thousand five hundred dollars in money on their notes, aggregating thirty-five thousand dollars, and the executors had thereupon handed over the same money to Mrs. Dunne in payment of her demand against the estate, and Mrs. Dunne had thereupon let James Francis have the same money on his note and mortgage, no one could have questioned the validity of the transaction. This is what was done in substance. The useless ceremony of passing the money from hand to hand was omitted, as is done in most of the ordinary transactions of life. The executors charged themselves in their accounts as having received the sum of thirty-five thousand dollars in cash on their own and James Francis Dunne's notes to the estate, and they are entitled to a like credit as having been paid to Mrs. Dunne in settlement of her claim against the estate.

The Court below also erred in refusing to allow in the settlement of the account in question, the several sums paid by the executors to M. Malarin. This was conceded by counsel for the respondent at the argument.

The Court did not err in refusing to allow the sum of seven hundred and thirty-nine dollars, paid by the executors May 11th, 1876, to the Bank of San José; and this was virtually conceded by the appellants' counsel. Nor was there error on the part of the Court in postponing the consideration of the executors' commissions until the settlement of the final account.

In so far as the decree of the Court below refused to allow the executors the sum of thirty-five thousand dollars, charged as having been paid to Mrs. Dunne, and the several items charged as paid to M. Malarin, the decree is erroneous, and must be modified accordingly. In all other respects it is correct.

Cause remanded, with directions to amend the decree in accordance with this opinion.

SHARPSTEIN, J., THORNTON, J., McKEE, J., and McKINS-TRY, J., concurred.

MYRICK, J., dissenting:

As I understand the agreement made beeween the execu-

tors and Mrs. Dunne and James Francis Dunne (and the agreement was in writing and is in the transcript), it was in effect that the payment of thirty-five thousand dollars should be made so as to relieve the property of James Francis Dunne from any claim which Mrs. Dunne might have or make. Although the executors were parties to it, they had no power to bind the estate, and its legal effect was only for the benefit of James Francis, and he should have borne the burden of the payment. However, when the accounts were before the Probate Court for settlement, Mrs. Dunne consented to the settlement, which embraced the receipt by the executors of the thirty-five thousand dollars, and its payment to her; she therefore is estopped from now questioning it.

The younger son, Peter Joseph, being a minor at the time of the settlement of the account, is not concluded, and I think his petition and the evidence shows that the Court was fully justified in setting aside the settlement as to him. The order of the Court below in reopening the settlement of the account was in terms limited to the interests of the petitioner, Peter Joseph; Mrs. Dunne was not before the Court in her own right; her petition to reopen had been dismissed on her own motion.